Butler, J.,
delivered the opinion of the Court.
The plaintiff’s first ground of appeal is “that the presiding Judge charged the jury that the defendant was not liable for the illegal acts of his agent or slave.” The report of the Judge does not authorize this ground, but as it is one upon which the general principles involved in this case may depend, and one that presents a question of law that has been involved in much doubt, from different decisions on the point and the manner of reporting them, it may be well to notice it, before adverting to the question under consideration.
In the case of Snee vs. Trice, as reported by Judge Bay in his second volume of Reports, 345, the liability of the master for the negligence and misconduct of the slave, is restricted to employments and trades in which the public is somewhat interested, by being required to repose confidence in the skill and fidelity of a slave so employed by his master; such as employments and trades conducted and carried on by ferrymen, blacksmiths, tailors, and others of like nature. In such cases the master is held liable for the acts of the slave. But the position is laid down that in general the master is not to be. held answerable for the negligence of his slave whilst engaged in his employment; and that damages occasioned by misfeasance or nonfeasance, except in the cases above mentioned would not afford a cause of action to the party injured.
Judge Brevard, in his series of valuable decisions, which will be shortly published, has preserved his report of the same case; according to it the distinction maintained by Judge Bay *267 is not recognised or admitted; but the case was made to turn on the question, whether the injury complained of arose from negligence or accident. Judge Brevard lays down the law thus: “that the doctrine respecting masters and servants as it obtains here and in England, is properly applicable in this country to the relation of masters and slaves; and that a master is liable for á civil injury occasioned by the misfeasance or neglect of his slave. The, injury, however, thus occasioned, for which the master is answerable, should appear to be occasioned by a slave in performing some lawful and voluntary act, by the command, permission or consent of his master, either expressly proved or to be inferred from the nature and circumstances of the case, and that the plaintiff would have been entitled to recover if the evidence had been sufficient.”
In the case of Wingis vs. Smith 3 McCord, 400, Judge Nott discusses the subject and recognises the distinction taken by Judge Bay, (perhaps not having seen Judge Brevard’s report at the time,) and comes to the conclusion that the plaintiff was not entitled to recover damages which he had sustained by the gross negligence of the defendant’s slave; and overruling Judge Waties, who had held otherwise on the circuit. The whole doctrine afterwards came up for consideration before the late Court of Appeals in 1832, in the cases of Moore vs. Drayton, and Parker & Co. vs. Gordon. The opinion of the Court was delivered by Mr. Justice O’Neall, who seemed to regard the Court as overruling the case of Wingis vs. Smith, (he not laying down the law to the latitude maintained and sanctioned by Judge Brevard, as the case did not altogether require it.) The opinion, however, goes very far to sanction the general position taken by Judge Brevard, and I am" authorized to say that such was his purpose. The defendant’s slaves in these cases had the command of schooners, and by their negligent manner of navigating them occasioned injuries to the plaintiffs, for which the plaintiffs were allowed to recover, upon the ground that the slaves were in the employment of their masters at the time the injuries were done.
This case may stand with the case of Snee vs. Trice as reported by Judge Bay. The reasoning of the Judge leads to the general proposition laid down by Judge Brevard. In *268 these cases it is shown very satisfactorily that in all cases a master is liable for the acts of a hired white servant, when they are done in regular employment of the master. And according to the law, as it is now settled, I think the proposition may be laid down that in all cases a ¿raster would be held liable for the negligence or misfeasance of a slave whilst in the lawful and authorized employment of the master, and more particularly so when the master is acquainted with the means and manner of carrying on the employment, as when in the doing of which, steam or water or any other physical agent may be used. In other words, the distinction between slaves and other servants, so far as it regards the liability of the master for non-feasance and negligence, does not obtain in South Carolina. According, then, to the general principles' on the subject, the defendant in the case before the Court might have been held liable for the acts of Padget his agent or servant, if the testimony had warranted it. Padget was employed to work on the farm, and had a right in the legal business of his employer to use fire in clearing the new ground. Having done so by the consent of the defendant, if it had been shown that he used it with a reckless indifference to the plaintiff’s rights and property, as by setting fire to the log heaps at an improper time, or that the fire escaped from his not having taken proper precautions to prevent its spreading, there is no reason why the defendant should not have been held answerable for the consequences. But if the fire escaped by inevitable accident, or in any way which common prudence could not have prevented or remedied, the liability could not have attached.
The presiding Judge took this view of the subject, and says that it was well sustained by the testimony. The jury having found accordingly, the verdict must stand.
The motion for a new trial is therefore dismissed.